*MONTELLA WATHA V. STATE OF OHIO.

1. **Accused Jointly Indicted With Others and Separately Tried Upon Election of Prosecutor Cannot Challenge Array Summoned as Against all Accused.**

   An accused person, who has been jointly indicted with others for murder in the first degree, cannot complain of the overruling by the court of his challenge to the jury array, where he has been brought to trial upon election of the prosecuting attorney, and a copy of the venire, summoned in the case as against all the accused persons, was served upon him three days before the day set for his trial.

2. **Dry Partisans on Jury not Prejudicial in Trial of Crime Arising out of Liquor Prosecution.**

   Error will not lie to the overruling of a challenge to the array, on the ground that names had been placed in the jury wheel of persons who were known to have actively favored the "drys" in a recent local option election and the crime of which the accused was charged grew out of a contest over the illegal sale of liquor, if it appear that there was an entire absence of evidence of any kind tending to show that the jury commission, under authority of Gen. Code 11421, placed in the jury wheel names of persons who did not fulfill the qualification of being judicious and discreet.

3. **Good Character of Accused for Peace and Quietness not Sufficient to Offset Guilt Proven Beyond Reasonable Doubt.**

   An instruction given relative to the reputation of the accused for peace and quietness that good character with a reasonable doubt of accused's guilt should acquit him but if guilt is proven beyond such doubt good character would not save him, was not prejudicial to his interests.

4. **Prosecution of Members of Mob for Homicide.**

   In a prosecution of one alleged to have participated in a lynching, it is not error to charge the jury that "any words, acts, signs or motions, done or made for the purpose of encouraging the commission of the crime" may be considered by the jury in connection with the criminal character of the alleged acts of the defendant, and a verdict of guilty may be based on evidence, which the jury believed was entitled to credit, that the defendant mingled with the crowd some hours before the lynching occurred, and engaged in conversation regarding the

---

*Motion for leave to file petition in error in the Supreme Court denied June 27, 1911.

Watha v. State of Ohio.

events which led up to the lynching, and was heard to urge the crowd to avenge the blood which had been shed and soon afterward the doors of the jail were battered open, and the cell in which the decedent was confined was forced, and the deceased taken out and hanged to a telephone pole until he was dead.

[Syllabus approved by the court.]

ERROR to common pleas court.

*Flory & Flory* and *Thomas L. King,* for plaintiff in error:

Cited and commented upon by the following authorities: *Passenger Ry.* v. *Young,* 21 Ohio St. 518 [8 Am. Rep. 78]; *Fendrick* v. *State,* 28 O. C. C. 724 (9 N. S. 49), reversed by Supreme Court, *State* v. *Fendrick,* 77 Ohio St. 298; *Walters* v. *State,* 39 Ohio St. 215; *Burns* v. *State,* 75 Ohio St. 407 [79 N. E. Rep. 929]; *Jones* v. *State,* 51 Ohio St. 331 [38 N. E. Rep. 79]; *Bond* v. *State,* 23 Ohio St. 349; *Cincinnati, H. & D. Ry.* v. *Frye,* 80 Ohio St. 289 [88 N. E. Rep. 642; 131 Am. St. Rep. 709]; *Weaver* v. *State,* 24 Ohio St. 584; *Rupp* v. *Shaffer,* 12 Circ. Dec. 154 (21 R. 643); *Salomon* v. *Reis,* 3 Circ. Dec. 184 (5 R. 375); *State* v. *Lingafelter,* 77 Ohio St. 533 [83 N. E. Rep. 897]; *Woolweaver* v. *State,* 50 Ohio St. 289 [34 N. E. Rep. 352; 40 Am. St. Rep. 667]; *State* v. *Snell,* 5 Dec. 670 (2 N. P. 55); *Marts* v. *State,* 26 Ohio St. 162

*P. B. Smythe,* Pros. Atty., *Wm. H. Miller,* Asst. Atty. Gen., and *Seth McMillen,* for defendant in error.

SHIELDS, J.

At the April term 1910, of the court of common pleas of Licking county, Ohio, the grand jury of said county returned an indictment against the defendant, Montelle Watha, charging him, jointly, with some fourteen others, with the crime of murder in the first degree. To this indictment the defendant entered a plea of not guilty. A motion was made challenging the array of the jury, which motion was overruled. Thereupon the defendant was put upon trial to a jury, which returned a verdict of guilty against the defendant of manslaughter. A motion was filed by the defendant for a new trial, alleging various reasons why the verdict of the jury should be set aside and a new trial granted him, which motion was overruled; to which action of the court

the defendant excepted.  A motion in arrest of judgment was also filed by the defendant, which motion was overruled; to which action of the court the defendant excepted.  Thereupon the court sentenced the defendant to the term of twenty years imprisonment in the Ohio Penitentiary.

A bill of exceptions was tendered and allowed, and a petition in error is filed in this court to reverse the judgment of said court of common pleas, which said petition in error recites the following grounds of error:

"1.  That said court erred in ruling out relevant and proper evidence offered in behalf of plaintiff in error on the challenge to the jury array.  2.  Said court erred in  overruling the challenge to the jury array.  3.  Said court erred in admitting improper and illegal evidence offered on behalf of the defendant in error.  4.  Said court erred in excluding proper and illegal evidence offered on behalf of the plaintiff in error.  5. Said court erred in overruling the motion of plaintiff in error at the conclusion of the testimony of the defendant in error, to take the case from the jury and direct a verdict for the plaintiff in error.  6.  Said court erred in refusing to give to the jury, before argument, certain requests to charge offered by the plaintiff in error.  7.  Said court erred in giving to the jury certain requests to charge offered by the defendant in error.  8.  Said court erred in its charge to the jury to the prejudice of the plaintiff in error.  9.  Said court erred in refusing to give to the jury, after argument, certain requests to charge offered by the plaintiff in error.  10.  Said judgment is against the weight of the evidence.  11.  Said judgment is contrary to law. 12.  Said court erred in rendering judgment for the defendant in error when it should have been given for the plaintiff in error. 13.  Said court erred in overruling the motion for a new trial made by plaintiff in error.  14.  The sentence and judgment of the court is excessive and unwarranted by the evidence.  15. Other errors apparent upon an inspection of the record."

While the foregoing contain the assignments of error in the record on which the plaintiff in error asks for a reversal of the judgment and sentence, counsel for plaintiff in error, in their

Watha v. State of Ohio.

argument to the court, rely chiefly on the following assignments of error:

First. That the jury was illegally selected, drawn and summoned.

Second. That the number of names put in the jury box exceeded the number provided by statute.

Third. That only such names of persons who signed "dry" petitions were put in the jury box.

Fourth. That the court erred in overruling the challenge to the array by the plaintiff in error, for the foregoing reasons.

Fifth. That the court erred in its charge to the jury on the subject of the evidence introduced by the plaintiff in error, touching his reputation for peace and quietness.

Sixth. That the court erred in its charge concerning an accessory after the fact.

Seventh. That the court erred in its charge to the jury upon the subject of words spoken, or acts done, or signs or motions made by the plaintiff in error, for the purpose of encouraging the commission of the crime.

Eighth. That the court erred in refusing certain requests to the jury, requested by the plaintiff in error.

The preliminary steps necessary to be taken in the selection, drawing and summoning of a jury in a capital case are regulated wholly by statutory provisions. The accused is entitled to have these provisions observed before he is placed upon trial.

Gen. Code 13642 provides for the issuing of a venire by the clerk.

Gen. Code 13645 provides for the service and return of such venire.

Gen. Code 13646 provides that where two or more persons are jointly indicted for a capital offense, each person indicted shall be separately tried, and the clerk shall make out a venire, as provided in said Gen. Code 13642, for the trial of each person indicted.

Gen. Code 13648 provides that a copy of the panel of the jury returned by the sheriff shall be delivered to every person so indicted at least three days before the day of trial.

Gen. Code 13643 provides that if it appear to the clerk, by

the return of the sheriff, that any person named in the venire is dead, insane, absent, removed from the county, or not an elector of the county, or has been convicted of a felony, and not pardoned, the clerk shall draw from the box the number of ballots equal to double the number of such persons, etc. But the return of the venire in this case by the sheriff does not show the necessity for any such action by the clerk.

It is contended by the plaintiff in error that the court erred in overruling the challenge to the array of the jury made on behalf of the plaintiff in error before trial, because the venire was not issued, or the selection, drawing and summoning of the jury made, for the trial of the case as contemplated by the statute. It is contended that inasmuch as Gen. Code 13646 provides that the clerk shall make out a venire, as provided in Gen. Code 13642, for the trial of each person indicted, that therefore the accused was entitled to have a venire drawn and served upon him in his individual case before trial. The record shows that the accused was jointly indicted for said crime with some fourteen others, under docket No. 2866; that a venire was issued by the clerk and served by the sheriff upon a precipe filed by the prosecuting attorney of said county in said case, as directed by Gen. Code 13642 and 13646; and, upon the election of the prosecuting attorney to try the case, a copy of the panel of the jury, returned by the sheriff, was delivered to and served upon the accused at least three days before the day of his trial. The prosecuting attorney had the right to make the selection, and, having exercised it, and the jury having been drawn and summoned in the case named, we think that the objection urged in this respect affords no ground of error.

It is further contended that the court erred in overruling the challenge to the array of the jury, made on behalf of the plaintiff in error before trial, because of the action of the court in excluding evidence upon the objection of the state, offered by the plaintiff in error, by which it was sought to show by one of the jury commissioners for said county that said jury commission placed in the jury box the names, in part, of persons of known and pronounced opinions upon temperance, as evidenced by their signatures to certain "dry" petitions.

Gen. Code 11421, *et seq.,* provides that the jury commission shall, before entering upon their duties, take an oath that they "will consent to the selection of no person as a juror whom they believe to be unfit for that position, or likely to render a partial verdict in any cause in which he may be called as a juror," etc. Said statute further provides that said commissioners shall, at a stated time, "select such number of judicious and discreet persons having the qualifications of electors."

It thus appears that this commission is clothed with sole authority to select the names of persons for the performance of jury duty. They are to select the names of "judicious and discreet persons"; that is, persons who have, or as they have reason to believe have, the qualifications of sound judgment and discernment. The statute is silent as to the qualifications of jurors in other respects. It does not provide that they shall be of one sect or another; of one belief or another; of one party or another; but simply provides that they shall be "judicious and discreet persons." In the absence of a showing to the contrary, it is presumed that the jury commission performed its duty in this respect, as required by law.

An examination of the record shows that, in the impaneling of the jury, the plaintiff in error publicly announced, through his counsel, that he was satisfied with the jury, and that no question was raised by him of the want of the requisite qualifications possessed by each and every juror in the panel. We are, therefore, of the opinion that there was no error upon the part of the court in this respect, in overruling the challenge to the array by the plaintiff in error.

It is further contended by the plaintiff in error that the court erred in its charge to the jury upon the subject of the reputation of the plaintiff in error for peace and quietness. The testimony shows that testimony of this character was submitted to the jury. On page 1104 of the record, the court, in instructing the jury on this subject, said:

"The defendant introduced evidence tending to show his good character for peace and quietness. If, in the present case, the good character of the defendant for peace and quietness is

proven to your satisfaction, then such fact should be kept in view by you in all your deliberations, and it is to be considered by you in connection with all the other facts in the case; and if, after the consideration of all the evidence in the case, including that bearing upon the good character of the defendant, the jury entertain a reasonable doubt as to the defendant's guilt, it is your duty to acquit him. But if the evidence convinces you, beyond a reasonable doubt, of defendant's guilt, you must so find, notwithstanding his good character.''

Evidence of reputation and character is always admissible in a case wherein a party is charged with a crime, and such evidence is proper to be considered by the jury in connection with all the proven facts and circumstances in such case, as bearing upon the guilt or innocence of the accused; but such evidence raises no issue, the burden of which is assumed or imposed upon the defendant. It is, in no sense, an affirmative defense. And while we think that this instruction to the jury, if standing alone and not qualified by any other instruction given to the jury upon this subject, either before or after it was so given, would perhaps be erroneous, an examination of the record shows that the following special charge was given by the court to the jury at the request of the plaintiff in error, before argument:

Request No. 20. ''If the evidence of good reputation, taken in connection with the other evidence, raises in your minds a reasonable doubt of Watha's guilt of the murder charge made in the indictment, you can not find him guilty of such murder charge.''

Comparing this special charge with the court's general charge upon the subject of reputation for peace and quietness, can it be said that the jury was thereby probably misled, or that the general charge was erroneous? *Salomon* v. *Reis*, 3 Circ. Dec. 184 (5 R. 375) ; *Eckels* v. *State*, 20 Ohio St. 508, 514.

The charge of the court is to be construed as a whole. *Bean* v. *Green*, 33 Ohio St. 444; *Ohio & Ind. F. Co.* v. *Fishburn*, 61 Ohio St. 608 [56 N. E. Rep. 457; 76 Am. St. Rep. 437].

Considering that part of the charge of the court referred to, in respect to the defendant's reputation for peace and quietness,

Watha v. State of Ohio.

we think it excludes the possibility of prejudicial error, arising from the objection made to the charge of the court in this respect by the plaintiff in error.

Exceptions were also taken by the plaintiff in error to the court's charge in respect to an accessory after the fact. An examination of the record shows that the court made mere mention of this, and nothing more; and we do not think that the jury could have been misled by the court's reference thereto. We, therefore, think that there was no error committed by the court in its charge in this respect.

Exceptions were also taken to the action of the court in admitting certain evidence offered by the state, against the objection of the plaintiff in error on the trial, in respect to certain disturbances occurring and assaults made during the day preceding the evening of the alleged lynching of Carl Etherington, when and where it is claimed that the evidence shows that the plaintiff in error was not present.

The plaintiff in error claimed upon the trial that he was not away from his home and about the square in the city of Newark during the day, at any time when any riotous disturbances were going on, except that he went up street on an errand in connection with his work at home. But the evidence for the state tends to show that he was up street, and in that part of the city where the riotous disorder was prevailing as the result of the arrival in said city of some twenty detectives, armed with warrants to search certain places in said city where it was alleged that liquor was being illegally sold, contrary to the provisions of the Rose local option law.

Referring to the record on page 699, Kenneth Black, a witness for the state, testified, among other things, as follows:

"Q. Were you in the city of Newark on July 8, the day of this riot and lynching? A. Yes, sir.

"Q. Did you on that day see this defendant, Watha? A. I saw him in the afternoon, I believe between 1 and 2 o'clock.

"Q. Where were you when you saw him? A. We were standing over here by the National Bank on the west side of the square.

Licking County Circuit.

"Q. State where you were. A. Not the First National Bank, but by the Franklin National Bank.

"Q. Were you standing on Third street? A. Yes, sir; on Third street.

"Q. Who was with you, if any one, and this man Watha? A. There were several of us in the crowd; Lansing Sutton, Sanford Henry and Uly Craig, and a fellow named Johnson, from Granville. There were five or six of us.

"Q. State to the jury whether or not William Howard, at that time, had been shot at the park. A. Yes, sir; I think he had.

"Q. What, if anything, were you talking about? A. We were talking about the excitement.

"Q. About what excitement? A. The rioting.

"Q. What do you mean by 'the rioting'? A. The shooting of Howard, and one thing or another."

Further referring to the record, on page 702, Lansing Sutton, a witness for the state, testified as follows:

"Q. Were you in the city of Newark on the 8th day of last July? A. Yes, sir.

"Q. State whether you saw this man, Montelle Watha, upon that day. A. Yes, sir; I did.

"Q. Where did you see him? A. Well, I met him over there by the express office; right across the street over here.

"Q. On what street? A. On Third street.

"Q. Who, if any one else, was with you? A. There was Sanford Henry, Uly Craig and Kenneth Black, and a man named Walter Johnson, as far as I can remember. I know there were a good many in the crowd.

"Q. Tell the jury about what time of day that was? A. Well, it was about half-past one or two o'clock.

"Q. State to the jury whether or not you had any conversation with Montelle Watha, or the other man that you have mentioned. A. Not personally with him, but I had a conversation with all of them.

"Q. What was that conversation? What were you talking about? A. Well, we were talking about dry detectives be-

Watha v. State of Ohio.

ing in town, and generally talking about the whole thing. About them doing the searching.

"Q. State to the jury whether or not, at that time, you knew that William Howard had been shot.    A.   Yes, sir; he had.

"Q. State to the jury whether or not there was anything said in that conversation—well, I will ask you this: state to the jury whether or not there was any conversation in that crowd about the death of William Howard at that time.    A. Well, I don't remember whether there was or not."

Further referring to the record, on page 711 Sanford Henry, a witness for the state, testified as follows:

"Q. About how long have you known him?" (referring to Montelle Watha.)    "A.   I think between nine  and  ten years; possibly longer than that.

"Q. Were you in the city of Newark on July 8, last?   A. Yes, sir.

"Q. That was the day of the lynching and riot?   A.   Yes, sir.

"Q. Did you, upon that day, see this defendant, Montelle Watha?   A.   Yes, sir.

"Q. Where did you see him?   A.   I believe I saw him once on Third street.

"Q. Where upon Third street?   A.   About the corner of the Franklin National Bank.

"Q. Who, if any one, other than yourself, was present? A.   Well, there was U. G. Craig, Kenneth Black and Lansing Sutton, and a couple of young men from Granville.

"Q. Did you, at that time, have any conversation with Montelle Watha and the other men that you mentioned?   A. Yes, sir; we were talking together.

"Q. Tell the jury what you were talking about.    A.   Well, we were talking in regard to the events of the day.

"Q. Tell the jury what it was.    A.   In regard   to the rioting.

"Q. What else?   A.   And the shooting of Howard.

"Q. State whether or not this defendant, Montelle Watha, was engaged in that conversation, and what he said, if you

know.  A.  Well, he was with the crowd talking; but; in regard to what he said, I can not just remember.  I can not just remember at that time what he said while we were talking there.

"Q.  How long did you stay together there?  A.  I suppose we were together there possibly twenty minutes.

"Q.  Were you waiting there for anything?  If so, what was it?  A.  We just simply met there and talked.

"Q.  What, if anything, did you hear this Montelle Watha say?  If he did say anything to anybody, during that conversation.  A.  I believe I heard him speak to Craig—to U. G. Craig.

"Q.  What, if anything, did he say to Craig?  Tell the jury what it was.  A.  I think he asked Craig how many revolvers he had; and Craig answered:  I haven't got any."

In the light of the foregoing evidence, we find no error in the action of the court in the admission of this evidence.

Error is also assigned because the court instructed the jury that "any words, acts, signs or motions, done or made for the purpose of encouraging the commission of the crime, are sufficient" as bearing upon the criminal character of the alleged acts of the defendant.

Persons participating in the commission of a crime do so either as principals or as those who aid, abet, or procure the commission of a crime.

Gen. Code 12380 provides that whoever aids, abets, or procures another to commit any offense, may be prosecuted and punished as if he were the principal offender.

After testimony was given to the jury tending to show the state of mind of the plaintiff in error in the afternoon of the day in question, as hereinbefore stated, the record shows that in the evening of that day, the plaintiff in error met with a large number of persons—perhaps thousands—who had assembled in and about the county jail where Etherington was confined, and, in the language of Joshua Hull, a witness for the state, at page 595 of the record, states that the plaintiff in error said, in addressing said assemblage:

"I heard him say that he abhorred lynch law, but, in this

Watha v. State of Ohio.

case, he wanted the blood of Howard—Howard's blood avenged; and he said: Come on, boys; come on.

"Q. What else did you hear? A. I walked away.

"Q. What was the last thing you heard him say? A. 'I want the blood of Howard avenged.'

"Q. What else? A. 'In this case.' And he says: 'Come on, boys; come on.' "

Soon afterwards, it appears that an assault was made on the county jail; that its doors were forced open; that Etherington's cell was broken into; that he was removed therefrom, and was led to the corner of the public square of said city, where he was hanged to a telephone pole until he was dead.

If the jury believed the testimony of this witness and other testimony introduced in support of this issue of fact, surely here was an active participation in a felonious plan, under concerted action, rendering the accused liable as an aider and abettor and procurer in the commission of a crime. *Baker* v. *State*, 12 Ohio St. 214; *Hanoff* v. *State*, 37 Ohio St. 179, 184 [41 Am. Rep. 496].

Exceptions were also taken to the action of the court in refusing to give to the jury the following requests submitted by counsel for plaintiff in error. The first request to charge, and refused, was request No. 22, on page 1062 of the record. An examination of the court's charge shows that the substance of this request was repeatedly and variously given by the court to the jury, and other requests submitted by counsel for the plaintiff in error; we, therefore, find no error on the part of the court in refusing to give such request.

Request No. 3, on page 1060 of the record: The record shows that the court charged the jury on page 1082 on the proposition embraced in said request.

Request No. 1, on page 105 of the record: Gen. Code 13692 provides that when the indictment charges an offense including different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any inferior degree. The crime of "riot" not being embraced in the crime charged

in the indictment, we think the request made was properly re-fused.

Requests Nos. 17 and 18, on page 1063, and request No. 4, on page 1064 of the record, we think were properly refused.

Several other assignments of error are made upon the record, but we do not deem it necessary to notice them further than to say that, in our judgment, they are not maintainable; and, upon the whole record, we are of the opinion that there is no error in the record, prejudicial to the legal rights of this defendant.

The judgment is, therefore, affirmed, with costs. Exceptions noted, and said cause is remanded to the court of common pleas of Licking county for execution.

**Powell** and **Voorhees, JJ.,** concur.